Fozie RAHAL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12544.

Criminal Court of Appeals of Oklahoma.

Jan. 15, 1958.

John W. McCune, Tulsa, for plaintiff in error.

Darven L. Brown, City Attorney, Robert N. Wilde, Asst. City Atty., Tulsa, for defendant in error.

POWELL, Judge.

Fozie Rahal, plaintiff in error, hereinafter referred to as defendant, was charged in the municipal criminal court of the city of Tulsa, Tulsa County, with assault and battery upon the person of Wilma Bice, by striking her with his hands. The accused waived a jury and was tried before the court, found guilty and his punishment assessed at imprisonment in the Tulsa county jail for ten days, and to pay a fine of $50, and the costs.

The defendant has filed a brief herein in which he seeks a reversal of the conviction on the ground that the court erred in finding the defendant guilty, and that the sentence imposed was the result of bias and prejudice.

Two witnesses testified for the State. Wilma Bice testified that she applied for employment from the defendant at the Tulsa Star newspaper office and worked over a period from Wednesday until Saturday, and completed the work that she was hired to do on a Saturday morning; that she demanded her pay from the defendant, and he told her to come back on Monday. She was accompanied by Bessie Cheek when she applied for the work, and Bessie Cheek went with her each time she sought to collect her pay. She said Bessie was her cousin, and that Bessie helped her in the work that she was employed to do. Witness said that she told the defendant on Monday evening that she was tired of coming back for her money, and that she had asked him to pay her on Friday evening, Saturday morning, Saturday evening,

Monday morning and Monday evening. She was asked what happened the last time she had demanded her money, and she answered:

"Well, he told me he would give me two dollars to settle it. I said no. He offered to give my cousin and I $10 apiece for the work, I would like to have the whole $10. He got mad. My cousin said something to me. He started to hit her. I got between them. When I stepped between them he got mad and started cussing. Then he knocked me over the desk up against the filing cabinet, then he hit me."

Witness said that the defendant hit her with his hands, and that if he had anything in his hands she did not know it. She said that she did not make any threatening remarks to the defendant, and had not struck him.

On cross-examination this witness said that when the altercation occurred her cousin's boy friend was sitting in a car out in front waiting for them. She said she had told the defendant that if he did not pay her she was going to call the police, but denied calling the police first. She admitted that when the defendant handed her $2 that she threw it back at him.

Bessie Cheek testified that she was a cousin of Wilma Bice, and went with her on the Monday in question to the Tulsa Star office "to get our money that he owed us". She said:

"A. Well, we asked him to pay us. He said to come back that evening. We went back about five o'clock, and he said he didn't have it, to come back in the morning, and then I told him there wasn't any use in us coming back in the morning. He got mad, he started to cuss; he was going to hit me, and my cousin got between us.

"Q. When you say he was going to to hit you, what did he do that led you to believe that? A. He walked up toward me with his fist doubled up and cussing me out and everything.

"Q. Your cousin stepped between you? A. Yes.

"Q. Then what happened? A. He shoved her out of the way over the desk, pushed her over the desk. She got up, he walked over, he hit her."

She further testified that the defendant struck her cousin twice with his hand, and she claimed that her cousin was pregnant.

This ended the evidence for the State. The defendant testified that he was the owner of the Tulsa Star, and he was asked if he employed either one of the girls who had testified. He answered:

"A. It wasn't exactly employment. They come in and asked me to use the the telephone. I said yes; she used it, that girl with the green dress, she asked me to use the telephone. I said, 'You may if you don't use it over three minutes'. The other girl was with her; she was crying. When they hung up I asked, 'What are you crying about?' She said, 'We are looking for a job. We can't find one, have you an opening?' I said, 'I don't have an opening. I have an unfinished mailing list. I will give you five dollars to finish it. It is about six hours work.' She said, 'I am very grateful if you will give me an opportunity.'

"Q. Which girl? A. Wilma. I showed her the mailing list. I said, 'It is six hours work, not over seven hours.' She said, 'I can't use the typewriter, but I can use fast longhand writing.' I said, 'That will take too long'. She said, 'I don't mind it'. I said, 'You might be working five or six days on it.' She said, 'I don't mind'. I said, 'You finish this job and I will give you a job selling subscriptions. I will give you a dollar for every subscription you sell. You got to be right, above reproach. I don't want boys hanging around or any 'phone calls.' When she came back an hour later and started to work. Then she started on the mailing list. I says, 'It will take too long a time.' She said, 'I don't mind in as much as I am not working.' I said, 'There is only five dollars in it. Don't tell me later on I owe you a couple of weeks wages.' She said, 'I am very grateful for the opportunity.'"

Defendant further testified that Wilma Bice forgot to address the Washington, D. C., mail on Saturday, but agreed to come back and finish it on Monday, and in the mean time she drew $2 of the $5 coming to her. He denied that he had employed Bessie Cheek, but said that she voluntarily aided her cousin, and that on Saturday he gave her $1. He claimed that she was hanging around her cousin, and he said that on Monday morning he gave Wilma another dollar, and that when she finished her work he was not at his place of business, but that she came in around six o'clock and asked him for her money, and he gave her $2, and that she was satisfied but that the little girl, Bessie Cheek, said, "Throw it in his face, the dirty so-and-so, he worked us for three or four days". He further said that the Check girl said that she had a boy friend out there, and that they needed money to buy gasoline, and that she "got to hollering in a loud voice" and a lot of men from the Paint Union were looking in there, that she threatened to call the police, and claimed that she knew officers at the police station, and had a boy friend there. He denied that he threatened or struck either of the girls. He denied that he pushed either girl over the desk, and said as to the Bice girl, "I hope I drop dead if I laid my hand on her." He said, "The little girl said, 'Let's go file charges on the dirty so-and-so. We will show him how he can mess with us.'" He said they wanted $15, but would settle for $10. He said there were eight or ten people watching from the front door, and that he would not have dared put his hands on either one of the girls, or strike either of them, under such circumstances.

Wilma Bice on rebuttal denied that she demanded $15, but said that she did talk to her lawyer, and did know the desk sergeant on the police department, and that later she filed a complaint.

At the conclusion of the evidence, the court said:

"It appears to me that the man is guilty as charged for a number of reasons. I could not believe anything he said on that stand. The first thing he said, 'I will call the police', and then he said she said she would call the police. I find him guilty as charged, and his punishment will be $50 and costs, and 15 days in the county jail."

In the judgment entered, this was changed to ten days in the county jail, as hereinbefore stated.

It is a general rule adhered to by this court in a long line of decisions that when there is competent evidence in the record to support the finding and judgment of the court when a jury is waived, this court will not reverse the judgment imposed. See Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208. However, under the authority of 22 O.S.1951 § 1066, this court does have jurisdiction to modify such judgment.

The defendant argues that the judgment entered is excessive and the result of bias and prejudice. We note that nowhere was there any evidence to show that statements were made by defendant contradictory to his evidence given at the trial, and that the only evidence the court had for consideration was from interested parties. If the court had simply said: "It appears to me that the man is guilty, as charged", that would have been sufficient. But weight is lent to the argument of the defendant when the judge said, "I could not believe anything he said on that stand."

Under the circumstances, it lends credence to the argument that the judge was biased and prejudiced in the matter of the assessment of the punishment. See Shawan v. State, 82 Okl.Cr. 1, 165 P.2d 387.

In the interest of justice and fair play, the judgment entered is modified to a fine of $50 and costs, and as so modified, is affirmed.

BRETT, P. J., and NIX, J., concur.